We will move to the next case on the calendar, which is 24-968 United States of America v. Michael Paschal. I understand the government is present, and counsel for Mr. Paschal will be arguing remotely. So we'll wait. Counsel for the government can come up to the table, and let's get the computer system going here before anybody starts. Let's just do a sound check before we start anything else. I understand we have Attorney Shevitz appearing by Zoom. Ms. Shevitz, can you just acknowledge you can hear us, and we'll acknowledge if we can hear you. I can hear you, Judge, and hope that you can hear me. Yes, you're coming in loud and clear. So Ms. Shevitz, I understand you would like to reserve two minutes for rebuttal. You may proceed. Yes. This case involves the trafficking of a 17-year-old girl that the defendant did not believe was underage. Intent, knowledge, was the only disputed issue in this case. And the jury was charged that there were three ways to prove his knowledge. The actual knowledge, reckless disregard, or a presumption. We call it a presumption. The government says it's not a presumption of knowledge by the fact that the defendant had a, quote, reasonable opportunity to observe. Yeah, so why don't we tackle that issue, the 1591C issue first. Tell us how you deal with our decisions, for example, in Robinson, where we said that it's 1591C, that particular provision is not a means of proof. The quote from our case is that it is a freestanding alternative to proving either of the men's array of alternatives in 1591A. Why don't you react to that? Yes. In our reply brief, around page four, we discussed the provision that it shows that it is not a strict liability provision. It was enacted to be a strict liability provision first, but the House bill did not make it. The members of the Senate committee said that that would apply only if there was a reasonable opportunity to observe. I was going to add to this question. So if it were expressly a strict liability provision that just said that there's no need ever to prove knowledge under any circumstances, that Congress could do that, right? Yes. Okay. So if Congress says, if there's a reasonable opportunity to observe, then it becomes a strict liability provision and there would be no need to prove knowledge. Congress could do that too, right? Congress could do that, but wouldn't do it here. And so why isn't the language of the statute of Congress doing exactly that? It doesn't say if he had a reasonable opportunity to observe, he's presumed to know. It just says if there's a reasonable opportunity to observe, the government does not need to prove knowledge. Because the statute still contains a knowingly element. So it's inconsistent. Well, no, it's an exception. 1591 says you have to know. And 1591C says, oh, by the way, you don't have to know if this other thing is proven. Why is that not the way to read the language? Because it relies on what appears, what operates as presumption that if one has an opportunity to observe a 17-year-old girl, let's call it, then that person knows or a substitute for knowing. But why do you say that? Because the statute doesn't say that. The statute says, I suppose, that even if you never see the young woman in question, but you know that there is such a person out there, and you've been told explicitly that she is 17 years old, and you proceed to arrange prostitution encounters for her, then you would still be guilty, right? Even though you did not have a reasonable opportunity to observe. Is that not the case? Yes, that's correct. Under the knowing standard. Right. And roughly the same would be true if it wasn't absolute knowledge, but was reckless disregard of facts that you did know. So why do we assume that, I mean, the knowledge provision can be an independent way to liability. But if you do have a reasonable opportunity to observe, it's kind of, it's almost negligence. It's not quite negligence, because it doesn't say that the government has to prove that a reasonable person, after that opportunity to observe, would reach this conclusion. But it's kind of like that. It's a, I think it's, as Judge Banasch suggested, it's a strict, a conditional strict liability. There are other routes to liability, but this one is not a sort of bastardized version of the first, it's just a different one. It's a different one, but it's promised on having a reasonable opportunity to observe, and that tells you something. That tells you something. It's like having stolen goods, and because there's a lot of them, and because they're on your person, you supposedly know that they're stolen, or any other presumption. I'm re-conflating two things. Why Congress thought it was a good policy reason to adopt this statute, that's one idea, and maybe it's true that they thought this was a good proxy for knowledge, in the sense that they were just as happy to have someone convicted if they have a reasonable opportunity to observe, as if they knew something. But that's different from saying, well, how is it playing out in trial? Because Congress did not say, this is a form of proving knowledge. There are all sorts of other things that they could have put in there as alternatives in 1591C saying, this additional fact makes someone just as culpable in our eyes, as if they had knowledge of underage child. They could say, and, in the alternative, they either had a reasonable opportunity to know, or the victim was under 12. Yes. Right? And that would just be another thing, just another alternative. They say, all of these people in our eyes are just as guilty. So why is it not the case, because Congress said, need not prove, not that the element of knowledge shall be deemed proven, why is it that we should treat it as a presumption, which is really an evidentiary substitute? Yes, because Congress did not change the statute that requires one to knowingly. Yeah, it did. It said, 1591C, you need not prove knowingly. It changed it. And that's an amendment in the statute. You keep saying that they have to prove knowingly, but the statute says you need not prove knowingly. You need not prove that, yes. So how do you say that they have to prove knowingly, and this is the way, when Congress has told us, need not prove knowledge? I don't understand that. You seem to be reading that language out of the statute. But as we discuss in page 4 of the reply brief, Congress did not pass a strict liability statute that would have said, in a prosecution under this subsection, the government need not prove that the defendant knew the person had not attained the age of 18 years. Okay, let me ask you then a different question, which is predicate to this. Where was this constitutionality argument raised in the district court? My understanding, the government says it wasn't. Tell me where in the record. It was not. Okay, so we are in the world of plain error, you would agree? Well, we're also in the world of what the First Circuit in a case called National Association of Social Workers versus Harwood, 69 Fed 3rd 622, discussed raising what they call virgin issues. And then an appellate court, I'm asking the appellate court to breach this as a matter of its discretion. Yeah, which we do under plain error review. There are certain conditions that allow us to nevertheless review it. My question was, is it governed by plain error 52B? Rule 52B of the criminal procedure? Yes, it could be. Can I ask about the confrontation clause objection? Sure, yes. So the district court thinks that the person who's going to do humanitarian work in the Ukraine is tantamount to a soldier who's being deployed, right? Yes, that's what he thinks. And he thinks that's wrong because it's voluntary. Totally voluntary. Totally voluntary and fixable and there's still a confrontation clause. So why do you think it's fixable? Because the court could have, if it wanted to adjourn the trial, it could have ordered the witness to not go right then, whatever the arrangement. In other words, if the government has to do something, the government has to make reasonable efforts, right, to get the person to trial. What did the government need to do other than to issue a subpoena to the witness in advance of the trial? Probably nothing. That's all they would need to do. Probably nothing. If they issued a subpoena, he would have to be present at the trial. And then he could make a motion to quash the subpoena and things might have happened in that event, that would have been a very different situation. But the government did not take the, maybe they'll argue to us, unreasonable step of serving a subpoena on one of their witnesses. Right. If the government had a conversation with him and said, we'd like you not to go to Ukraine. And he said, no, I'm going anyway. And they said, well, we're going to subpoena you. And he said, well, I'm not going to abide by the subpoena. And the government explained all that to the district judge. Would that be enough to determine that he was unavailable or do you need to go through the process of issuing the subpoena and getting the defiance? Assuming he's, the witness is going, the witness, who is a law enforcement officer, is going to defy a subpoena. I don't know why we're assuming that. I'm assuming that he's going to comply. So can I ask you about sort of the voluntary aspect? So if somebody, so you agree that a service member who is deployed is unavailable, right? I'm not going to say all the time, but generally it has been, yes. If I volunteer for the military and I get deployed, does that mean that I might not be unavailable? If you volunteer at a time when you know you're going to be a witness at trial, perhaps that would not be unavailable. Here, this man knew as a law enforcement officer who had done a search, that he was going to have to be a witness at trial. And he testified to a very critical statement, which, by the way... So Caitlin herself testifies that she told Pascal her age, right? And the social worker says that Pascal told him that he knew her age, right? Yes. And then there's the text messages that seem to indicate that he knew her age. I don't think any of those did particularly, but okay. But anyway, I'm just saying there's lots of other evidence, knowledge of age. So why isn't it cumulative and therefore harmless, even if it shouldn't have been admitted? Well, it was used by the government in summation, which called it a critical statement. Why? Because these witnesses were, in fact, impeached. Caitlin could have, in fact... Well, they say it's a critical statement to the district court because they want to say that it's critical that he memorialized it contemporaneously, right? Isn't that the context of the statement about it being critical? Well, in a post-sentencing press release, the Southern District U.S. Attorney's Office stated, quote, I'm sorry. What does a post-trial press release have to do with what was before the jury? Because I thought the question is, what would have possibly changed the outcome of the jury trial? Are you saying things they say afterwards matter? I am talking about how critical, how important the statement was to the jury, to the government. Well, then how about this one? That didn't, as far as I understand, depend on any testimony of any witness who could or could not have been impeached. When the victim became sick, the defendant, as I understand it, brought her to a children's hospital. Was that impeached by someone? That was not admitted. That was disputed in that the children's hospital... It was not admitted? No. Oh. No, not admitted by the defense. Excuse me, when you say it was not admitted, you don't mean it was not admitted into evidence, that fact. No, I... You mean it was not conceded by the defense. It was contested. It was contested because the children's part of the hospital was attached to the Presbyterian Hospital, as my understanding, which they argued. And when the victim was brought to the hospital, they transferred her to the children's hospital. I see. Okay. Well, let's see. I think we've heard your argument. Why don't we come back to you when it's time for rebuttal? Sure. Why don't we hear from the government? And we have AOSA Delegati. Yes, thank you, Your Honor. Good morning, and may it please the Court. Jackie Delegati for the United States. I represent the government on appeal, and I represented the government at trial below. For several months in 2020, Defendant Michael Pascal trafficked a minor girl. Okay, we know all that. Let's talk about the issues in the case. You can take them in any order as far as I'm concerned, but let's get to the issues and not waste a lot of time telling us what a bad guy he is because we all agree on that. Yes, Your Honor. So I'll start with Defendant's challenge to the validity of the sex trafficking statute, section 1591C. That challenge is meritless and fails under the applicable plain error standard because the evidence at trial was overwhelming in showing that not only did Pascal have a reasonable opportunity to observe that the victim was a minor, but that Pascal, in fact, knew definitively that the victim was a minor. Well, that's sort of a harmlessness argument, right? To say, who cares about this because there's no way he wouldn't have been convicted on the merits, right? That's fair, Your Honor. But with respect to the Defendant's challenge to the validity of the statute, section 1591C, as outlined by this court in Robinson and more recently in Concepcion, does not create any improper presumption of knowledge as the Defendant asserts. Instead, as virtually all courts have held, including this one multiple times, section 1591C's opportunity to observe language instead creates an alternative means of satisfying the statute. So, obviously, you're arguing that the government is just correct. There was literally no error of any sort under our precedence. It sounds to me like your opponent agrees this is an issue that was not preserved and the district court is, therefore, revealable only from plain error. So they would have to show not only that there was an error, but also that it was clear or obvious, meaning pointing to some case law that shows not just that it was a mistake, but the district court was derelict in its duties in not recognizing on its own to Esponte that this was somehow unconstitutional, right? That's right, Your Honor, and that's certainly not what the case law holds. Again, as affirmed by this court recently in Concepcion following Robinson, the law is overwhelmingly clear. Section 1591... I mean, is it overwhelmingly clear? I mean, it does sort of set out that it needs to be a known violation and then it says, but if you have a reasonable opportunity to observe, you don't have to... It does kind of seem like it's suggesting that we think the defendant knows when he had a reasonable opportunity to observe. Your Honor, I think that the case is cited in defendant's brief for telling. There is not one case cited for support of the 1591C is somehow ambiguous, and so the defendant has instead fashioned this challenge as one regarding whether there's some sort of presumption created, an improper presumption created under Leary and Tott, and those cases don't deal with Section 1591C at all. But they deal with presumption, so it wouldn't be impossible for Congress to write a presumption so, like, it could have written into the statute when there's reasonable opportunity to observe, the defendant is presumed to know the victim's age, right? That's right, Your Honor. Congress is empowered to write such a presumption into the statute, and even if it did... So the way it's written, it's not totally implausible to think that that's what Congress had in mind, is it? I think it is, Your Honor, when you read Robinson and when you read cases that follow Robinson, and when you read the way that Congress amended the statute following Robinson to clearly state that reasonable opportunity to observe functions... Means the government does not need to prove it at all. The government need not prove it at all, that's exactly what the statute says. If it were a presumption, would it survive the kind of Tott kind of analysis? Is there a close enough relationship between a reasonable opportunity to observe and knowledge of age? It certainly would, Your Honor, and cases that have dealt with what reasonable opportunity to observe actually means speak to why that presumption would be satisfied. Because courts in Robinson, in Alcius, in Corley, cases that are cited in the government's papers make clear that the fact that is proven reasonably flows from the fact that would be presumed. In this case it would be if the defendant had some opportunity to look at the victim in person, and courts have held it only be a couple of times. It is reasonable to assume that observing that victim in person would provide enough knowledge... So it's obvious if the victim is 10 that an opportunity to observe would provide enough evidence of awareness of the age, but if the victim is 17, it might be harder to understand, to know that the person was not 18. I think that's fair, Your Honor. It might be harder, but the question is how courts have interpreted reasonable opportunity to observe. And I guess, is reasonable opportunity to observe, does that just mean visually? Or, you know, could it encompass what we have here, which is they had a long car ride together and a conversation and, you know, you could observe more than just one's physical characteristics. There are some cases, Your Honor, where courts have held the standard met under circumstances that are far short of what the defendant and the victim experienced here, where there were a couple of in-person interactions that were not as in close quarters as you had here, where the defendant harbored the victim in his home for several months and observed her up close and personally. I suppose if we did treat it as a presumption, then maybe we would understand reasonable opportunity to observe as related to whether it was you had enough of an opportunity to observe that it would be reasonable to expect you to be aware of the age. That's right, Your Honor. So maybe we'd understand the standard differently if we thought it was an evidentiary presumption. That's right, Your Honor, but again, it's not a presumption. Congress is abundantly clear that it's not creating... Okay, can I ask about the Confrontation Clause question? So as Judge Lynch pointed out, usually the government has to do something to obtain the witness' appearance at trial, and here the government just said he's going to be overseas, so we think he's unavailable. Isn't that not requiring the government to do anything to obtain his appearance? Your Honor, so let me first speak to what the government did do, because the government did make reasonable efforts to secure Special Agent Kuntz's testimony at trial. Can I just pause, because I have a sort of administrative question here. A lot of the details of what we're talking about, or we might talk about, are still, as I understand, under seal in the district court. Is that correct with these things? There's lots of redacted and unredacted materials, I thought. I'm not aware that it's all been unsealed. Could we just clarify that? I just want to know where we stand on this. Those details were unsealed, Your Honor. They were unsealed. That's right, Your Honor, and so I'm happy to proffer some of them to the court. No, no, no. I just wanted to make sure before we get into detailed discussions that I would not, for example, inadvertently bring up some material that's sealed. I apologize for the interruption. The question, I don't think the answer would be sealed. There are subpoena forms in the United States Attorney's Office still, right? Yes, Your Honor. And to issue one, you just have to sign it. Maybe you have to sign the U.S. Attorney's name. I don't remember that. No, it's automatic. So all you have to do was take one of those forms, put in Agent Pence's name, and hand it to him. Well, that's right, Your Honor. And if you did that, he would be required to attend the trial unless he succeeded somehow in getting the court to quash the subpoena. That's right, Your Honor, but I don't think that is what is required under Rule 15. It is not required. If you had just a witness who wasn't an agent who was somehow out in the wild, but you knew where he was, and he was a little reluctant to come in, you would say, well, because he's going to go on vacation. He doesn't want to be around in the summertime. So he's going to leave New York to go to Massachusetts to spend the summer months. You would be able to not just take his deposition, and I think that taking the deposition is a different question than the admissibility of it. But you would be able to say, we're going to take his deposition in advance, and then we're going to use that deposition at trial, which is scheduled for July the 1st, because he'd like to go to Martha's Vineyard for the month of July. That would be, you could do that. You just decide to honor his vacation and not drop a subpoena on him in advance to require him to be present. Your Honor, I think the inquiry is fact specific, and certainly here you absolutely should... Well, I'm asking you that hypothetical. Under that hypothetical, Your Honor, so you're asking if the government did not subpoena that witness... If the government knew that the witness was going to be available, was going to be unavailable because he's going on vacation to Cape Cod during the time of the trial, and the government chose not to use a subpoena to obtain his presence, you would be able to use a deposition notwithstanding the confrontation clause, not respecting the rule, the hearsay rule, because he's not here at the time of the trial. Your Honor, I'm not aware of any case and defendant has not cited one that stands for the proposition... You think you could do that or you don't think you could do that? That's my question to you. I think in that case, Your Honor, I don't think that the court would order a Rule 15 deposition. In this case, if we're talking about ordering the deposition, it seems to me, if you had a... Suppose there was a possibility, it was still under discussion whether the trial would actually happen on that date or whether it would be adjourned until after Agent Kuntz returned. On the other hand, the man is going to a war zone. He might not come back ever. It might be perfectly reasonable to take his deposition under those circumstances. The question is, okay, fine, you take his deposition against that possibility, but what about once the trial is definitely set for a definite date? All you need to do, right, is serve him with a subpoena and he has to be there. That's right, Your Honor. And you're choosing... You're choosing... Well, I had asked a question... Hang on a second. Hang on. Hang on. Judge Lynch, finish. When you're done, Judge Van Aschen will... I understand that this man is doing something that is quite heroic. He's volunteering to go to a war zone to serve, not even to kill people, but to be a medic and to save them. I mean, that's a lot more important in the grand moral scheme of things than going on vacation to Cape Cod. On the other hand, on the other hand, he could volunteer to go to Ukraine a month later or two months later. No one's preventing him from doing that service to humanity. The issue is can the government just, in effect, elect to use a deposition instead of the simple process of subpoenaing the man and requiring him to be at trial? And so I think, Your Honor, the question is whether a subpoena is required in order to meet the requirements of Rule 15, and it is not. That's pretty minimal, isn't it? I mean, we've had cases about does the government have to spend money to pay for someone's lawyer to come if he says, I'm going to come from Switzerland, but only if you pay for my lawyer and put me up in a four-star hotel for two weeks. We have cases about that saying the government does have to take extraordinary means, but the premise of those cases is that the government, by offering to pay the basic expenses, has made a reasonable opportunity to obtain the presence of someone who cannot be compelled. But what about someone who can be compelled? You're telling me it is an unreasonable thing to ask the government to subpoena one of its witnesses? Well, Your Honor, I direct the Court's attention to Cannon, which is cited in our papers, that is more factually analogous to the circumstances presented here. There you had a witness who was employed both by the DEA and the United States military. He was not subpoenaed. He was deployed to Iraq, and the District Court held that a Rule 15 deposition was proper Yeah, but he was sent to Iraq, right? If I'm not mistaken, he was already, was he in the National Guard or something? You say he was employed both by the DEA and the military. So he was a deployed National Guard person. They send him to Iraq. Now, I'm not disputing that if the trial comes along and you happen to know that this guy is in Ukraine at the time, I mean, I suppose if he's a United States citizen, you might be able to subpoena him, but now we're talking about a rather extraordinary chain of events where he's going to have to possibly risk his life to move from one place in Ukraine to another and then fly back to the United States. But I think you agree, do you not, that the rule does not say if you let somebody become unavailable that you know you could have had available by a reasonable means. We're not doing that distinction. No, I think that's right, Your Honor, but again, I think the question is whether no subpoena makes the government effort to secure the testimony short of reasonable. I think Cannon says What did you do that was so reasonable? So what the government did, Your Honor, is the government explored whether Special Agent Kuntz would be able to testify remotely. The answer was that he could not because he did not have reliable cell phone or Wi-Fi service. It would have taken him several days to travel to a secure location to give that testimony, and even under those circumstances it wouldn't have been clear that he was able to testify at the trial. And the government also indicated to defense counsel that it was open to adjourning the trial to secure Special Agent Kuntz's presence, physical presence, at that trial, and then the defense did not move for any such adjournment. Did you move for such an adjournment? We did not, Your Honor. Why not? Because... Would that have been an unreasonable burden to ask the judge we have this witness, he's going to be doing this service to humanity, we could subpoena him, but it's really better, why don't we just postpone the trial for a couple, like a month, right, is what we're talking about, between the time that if he did his full volunteer service and expected to come back to the United States and resume his employment with Homeland Security. The difference between that and the date of the trial was about a month, right? That's right, Your Honor. So you could have asked the judge to adjourn the trial. I think that's right, Your Honor, but again, it goes back to what courts have construed as a reasonable effort, and no court has said that a government's request for an adjournment... Well, maybe this is going to be the one that does, come on. This is not a plain error issue or something, right? No, Your Honor. The issue, or the standard, Your Honor, is abuse of discretion, and I would... And so, I think under that... But who has discretion? The judge wasn't... The judge was asked about this sort of... Well, maybe... Okay, so you're now hiding behind the judge's discretion that the judge made a discretionary decision that you'd done enough, and that's what we're reviewing. That's the applicable standard, Your Honor, and Judge Broderick was presented with the evidence the government just proffered to the court regarding... So you said to the district court, we have explored the possibility of him testifying remotely, and it doesn't seem feasible, and we have agreed that if the defendant wants to, we would adjourn the trial to a later date to allow him to appear in person. That's right, Your Honor. Judge Broderick had all of that information before the adjournment. And did the defendant say, I don't want to do that, or they just didn't respond to the offer to adjourn the trial to a later time? The defendant didn't move for an adjournment, Your Honor. But the defendant was saying, it's a violation of my confrontation clause rights that he's not appearing in person, right? The defendant said to the district court, I object to the use of a Rule 15 deposition, but to the extent that the court determines that a Rule 15 deposition is appropriate, we have a suppression hearing where the defendant was present, and where the defendant had an opportunity to cross-examine Special Agent Kuntz. And so, therefore, there wouldn't have been a confrontation clause issue, even if the Rule 15 deposition... Was there a discussion about Kuntz changing his plans? Or subpoenaing him to force him to change his plans? Special Agent Kuntz communicated to the government that these were long-standing plans to travel to Ukraine. He was a trained paramedic. He had made the decision to offer humanitarian aid in Ukraine months before he was informed of the trial date, and so it was not easy for him to change those plans. And the district court did make findings that it would be dangerous for him to leave the battlefield to return, right? The district court did state in its opinion, authorizing a Rule 15 deposition, that part of the reason why it was doing so was because it would be exceedingly dangerous for Special Agent Kuntz to secure... Anyway, regardless of whether that is a problem under the confrontation clause, was there enough other evidence of that Pascal knew the age such that we could say that it was harmless? There certainly was, Your Honor, and that evidence is detailed in our brief. There's evidence of text messages between the defendant and a social worker with the Administration for Children's Services, in which he makes clear that he knew that the minor victim was 17 years old. The minor victim herself testified at trial and told the jury that she informed the defendant that she was underage. There is testimony, or there was testimony, excuse me, about the defendant having taken her to a children's hospital when she was ill, and so there was ample other evidence of the defendant's knowledge of her age. What about what opposing counsel says about, well, this was such important evidence that you put it in a press release? Your Honor, I think Your Honor is correct. What the government chooses to put in a press release does not determine whether the evidence was critical to what was presented to the jury at trial. I'm sure that's correct, and besides, the press release isn't in our record anyway. On the other hand, I suspect that the reason it's in the press release is the same reason it's in the summation, except now you're trying to persuade the general public that this was a terrible guy, and we brought him to justice, and congratulations to us. And that evidence is of some significance. But what counts, really, is the same argument about putting it to the jury, right, that it was part of the summation and referred to as critical, you know, because it's a confession, and that's very helpful. That's right, Your Honor. The government does not dispute that the evidence was helpful to its case. That is certainly true. I would dispute the defendant's contention that the government called the statement critical, and that somehow gets to whether this error was harmless. I think that misconstrues what the government was saying to Judge Broderick. This is right. The context of the critical statement is after he had said that there wasn't a contemporaneous documentation. He said it was critical to say that there was. That's exactly right, Your Honor. And so that statement was made in response to the defendant's contention during his opening statement that Special Agent Kuhn somehow had fabricated that statement. That is the correct reading of why the government made that statement to Judge Broderick. So actually, if he had appeared in person, he would have said he made a contemporaneous documentation, right? That's right, Your Honor. Well, he could have said it at least if he was impeached on a theory of recent fabrication. I mean, this is why the argument about he didn't, the defendant wasn't given the grand jury testimony before the deposition slash suppression hearing. The reason that's a red herring is that if they had that grand jury testimony and they tried to impeach the witness by saying, oh, you didn't say this in the grand jury, that would have made admissible the prior consistent statement in the report. And that would have actually been worse for the defense than just having the testimony itself impeached by grand jury testimony. And in fact, at the suppression hearing where, again, the Special Agent Kuhn was cross-examined by the defendant, the defendant actually introduced that statement. Of course, that wasn't a trial. That was a hearing. But to Your Honor's point, I think it is a red herring because there were also other ways in which the defendant could have impeached Special Agent Kuhn's honor. Well, indeed, and presumably did, not by well, whatever they did at the hearing by way of cross-examination, but also which was before the jury, but also there were two other agents in the room or in close proximity who did not recall hearing the statement. So that it's not like this was sort of gold standard confession. That's right, Your Honor. And Special Agent Kuhn's was cross-examined on that point for several minutes during the suppression hearing and that evidence was presented to the jury, Your Honor. Can I just clarify what my understanding of the record is that at the time of the suppression hearing, even though the grand jury transcript for Kuhn's had not yet been disclosed, was it the affidavit by Kuhn's in support of an application for a criminal complaint had been disclosed? Yes, Your Honor. And that affidavit, like the grand jury testimony, did not mention this particular confession. Is that correct? That's correct, Your Honor. Of course, the complaint could have been used as an alternative means to impeach Special Agent Kuhn's testimony. In the same way that the grand jury testimony could have, that you told a story about this defendant and you never mentioned this. Exactly, Your Honor. And it would have been the exact same form of cross. That's right. Okay, thank you. As a practical matter, I mean, maybe this is counterfactual, but if the district court had said, I don't think these circumstances mean that Agent Kuhn's is unavailable, so therefore I'm not going to admit the Rule 15 deposition, would you have proceeded without the testimony or would you have moved for an adjournment? Your Honor, I think it's hard to say sitting here today. I think, but I think it again goes to the question of harmlessness. I think the government could have convicted the defendant without the testimony of Special Agent Kuhn's, certainly given the overwhelming evidence that he knew that the minor victim was underage. And so the government certainly would have been reasonable in proceeding to trial without that testimony. We don't have anything in the record where the government communicates with the district court that says, if you don't find that he's unavailable, you know, we'd like an adjournment. Or if you don't find that he's unavailable, we're going to proceed or something like that. We did not make that request, Your Honor, no. Okay, why don't we hear from Ms. Shevitz who has reserved two minutes for rebuttal. And let's just take a second before we all start to make sure that the video link is up and working. Okay. Okay, Ms. Shevitz, we can see you. First of all, let me just confirm that you were able to hear your opponent's argument just now? Yes, I was. Very good. And we can hear you. So you have two minutes for rebuttal, and we'd ask you to keep it to the two minutes. I will. As to moving for an adjournment, at the suppression hearing, the transcript of which was provided to Richard Alcantara, without the redactions, the defense lawyer stated that he wanted the government to move for an adjournment. He was not going to move for the adjournment. And so he let the court know, and he let the government know that if the government moved for an adjournment, that's what they should do. They didn't. Now, the next thing is... Why is it the government's obligation? If the government says, we would agree to an adjournment, if you think that's important enough to satisfy your right to confront witnesses, why wouldn't you move for the adjournment? Well, because it's up to the government to prosecute a defendant, not the defense lawyer to unprosecute the defendant. And it's reasonable to say, prosecutors, if you're going to bring this case and you're going to have your witnesses and allow us to do what we're supposed to do to defend, you move for the adjournment so you can have your witnesses. It's not your obligation to ask for an adjournment so that the government can have another witness. If the government wants the witness, I guess it has two opportunities. One is to make sure the witness is there, and the other is that if they're going, if they believe that the witness has some compelling reason that they want to respect not to be there, to take these steps and see whether they can legally use his deposition. But that's all on them. That's not on you to facilitate their having the witness. And as to the fact that there was a memo of his prior supposedly contemporaneous statement, consistent statement, it's the defense's position that the jury should have been able to see cross-examination about the facts of preparation of that supposed prior consistent statement. Not that it was introduced at the suppression hearing as a fait accompli. The suppression hearing was had on a couple days notice, but the point of confrontation is, let's see what Agent Kuntz says on the stand before the jury about how that supposed prior consistent statement was prepared. I get the idea that it's the government's burden to justify bringing in its own witnesses and all of that, but if you thought that that was so prejudicial and it would be important to your case and there was an avenue to obtain the ability to do all of this in front of the jury, why, just as a matter of strategy, did it make sense to proceed without an adjournment if it was clear that you could have obtained one? It wasn't clear, for one. And for two, I maintain that the defense has the defense's position is to defend not to prosecute. We don't, you know, if the prosecution isn't going to be able to present its witnesses, that's its problem. We really don't want to solve its problem. Okay, I think we have your argument and we thank you. I have one more thing. I have one more thing. I'm going to give you 30 seconds. Okay. And the plain error, besides plain error, Judge Menasche asked whether the failure to talk about the presumption showed that it shouldn't be recognized as plain error because the judge wasn't derelict in his duty to recognize that position. That is correct. And that's why I'm saying there's another principle of appellate review and that is cited in the case I mentioned before where holding that an appellate court has discretion in an exceptional case to reach virgin issues, which were never raised, where it's a legal issue solely, where Okay, I think we have your argument. That's just another flavor of plain error. But we have the argument. Thank you very much for appearing by video. Thank you for counseling for the government, for being here in person. We will take the case under advisement. Having completed the business for which this court was convened, we will now stand adjourned.